**U.S. Department of Justice**

Civil Division

PDK:DMC:KChadwick
D. J. No. 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

Telephone: (202) 616-0476
Facsimile: (202) 305-7644

*Washington, D.C. 20530*

September 21, 2006

Adam P. Feinberg
Miller & Chevalier Chartered
655 Fifteenth Street, N.W.
Suite 900
Washington, DC 20005

RE: American Airlines, Inc. v. United States,
No. 04-1736C (Fed. Cl.)

Dear Mr. Feinberg:

This is the Government's first request, using the procedure you and I have previously discussed, for specific documents, responsive to our requests for production, that will assist Navigant Consulting in performing its damages review pursuant to the Court's order dated August 4, 2006.

Please let me know when the following can be provided or made available. Except as noted below, these documents are responsive to our document requests 3, 5, 7, and 14 and should cover the time period 1996-2004.

- All written policies or procedures for the collection and processing of user fees at the time of ticketing, including paper tickets sold at airports and travel agencies, with both automated and manual receipts, to include: any documents explaining how user fees collected at ticketing are accounted for in AA's accounting system; descriptions or plans of any periodic checks that may be performed to verify that collected fees are transferred to the appropriate account(s) for remittance to the Government; and any explanations of differences in the collection or processing of user fees, as between distinct ticketing channels (BSP, ARC, AA sales, employee sales, etc.).

- All written policies or procedures for the collection and processing of user fees after ticketing, to include the same categories of documents described above.

- All written policies or procedures for the processing of Miscellaneous Sales Receipts at any location – not limited to airports – to include the same categories of documents described above.

- Any distinct policies or procedures for collecting user fees at airports in the Caribbean, Central America, or South America.

- All written policies or procedures for the processing, and the allocation to user fee or other accounts, of XT, ZZ, and other invalid tax codes.

- The year-end Chart of Accounts and Trial Balances for 1996-2004. It will facilitate Navigant's review if AA will identify for us all accounts through which user fees collected for remittance to the United States Government could be processed.

- All documents, to include written policies, procedures, analyses, audit plans, work papers, spreadsheets, memoranda, reports, etc., relating to any sample testing of the XT or ZZ accounts, and the allocation methodologies for those specific accounts.

- All documents responsive to our document request number 2.

- All documentation relating to the appeal filed in 2003 by AA (or AMR) relating to user fee amounts.

- All documentation related to the ticket numbers listed in the attachment to this letter, which appears to be from a November 2002 allocation for the XT account. This should include documentation of routing and flight dates, and, for reissued tickets, all prior ticket numbers, routing, flight dates, and user fee information.

In addition, we would like the following information. Given the deadline imposed by the court, we would hope it will not be necessary to serve formal interrogatories. Let's confer at your earliest convenience as to how our damages team can most efficiently obtain this information.

First, we seek monthly summary level information for the XT and ZZ (if any) accounts for 1996-2004, to include for each month: the total number of tickets with XT and ZZ charges; total number of those XT and ZZ tickets which were also subject to XY and XA fees; aggregate collections for the XT and ZZ accounts; and total numbers of XT and ZZ transactions, by source (e.g., employee travel, miscellaneous sales receipts at airports, miscellaneous receipts from elsewhere, AA sales, ticket agency sales, etc.).

Second, we request explanations of the use and purposes of every code for any user fee or tax of any kind (as well as any "refuse" field) that could appear on any ticket issued by American for a flight into the United States from a location outside the United States, from 1996 to 2004.

Finally, we wish to know why the attachment to this letter indicates testing of 53 tickets, whereas documents provided to Government auditors appear to indicate that the monthly sample size for the XT account is 60 to 65 tickets.

I appreciate your professional courtesies in this case and the related cases, and look forward to hearing from you.

Very truly yours,

KYLE CHADWICK
Senior Trial Counsel
Commercial Litigation Branch