**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| AMERICAN AIRLINES, INC.<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES OF AMERICA,<br><br>Defendant. | ) | No. Civil Action 04-1736<br>Judge Susan G. Braden |

**AFFIDAVIT OF BERNARD F. WOOLFLEY**

I, Bernard F. Woolfley, hereby testify as follows:

1. I am a Director in the Washington, D.C. office of Navigant Consulting, Inc. (Navigant Consulting) where I specialize in performing litigation consulting and forensic accounting investigations. Navigant Consulting is a specialized independent consulting firm providing litigation, financial, and operational consulting services to various types of organizations. I am also a Certified Public Accountant in the State of Virginia.

2. Navigant Consulting has been retained by the United States Government (the Government) to provide independent consulting services in the matter identified above. I understand that this litigation focuses upon the collection and remittance of two different fees generally known as the Immigration User Fee (the Immigration Fee) and the Agricultural Quarantine Inspection User Fee (the Agricultural Fee). These are just two of the fees that American Airlines, Inc. (American Airlines) collects for the Government and other entities.

3. As part of our work on this assignment, Navigant Consulting has reviewed numerous documents produced by both American Airlines and the Government which include certain accounting manuals, procedures descriptions, audit reports, audit work papers and example tickets that show the collection (or non-collection) of Immigration Fees and Agricultural Fees. Navigant Consulting's review has been limited to the documents provided to us by counsel for the Government. We have not conducted any interviews with American Airlines' personnel and have not performed any testing of American Airlines' accounting systems.

4. Based upon our work to date, Navigant Consulting has been asked by counsel for the Government to determine if the available information shows any instances where fees collected by American Airlines under these two programs were not transmitted to the Government.

5. American Airlines (like other airlines) utilizes a standard convention (as established by the International Air Transport Association [IATA]) to track and summarize the various taxes and fees that it collects. As part of that process, each fee collected from a passenger is coded with a unique two letter code. All fees collected in support of the Agricultural Fee are coded as "XA" and all fees collected in support of the Immigration Fee are coded as "XY". I understand that, in conjunction with their audits of American Airlines, the Government's auditors have determined that there is not an issue with the remittance of fees that were coded as either "XA" or "XY" payments.

6. During the course of Navigant Consulting's review of the documents, I became aware that a portion of the fees that relate to the Agricultural and Immigration Fees were not being recorded to the "XA" and "XY" codes. In these cases, the fees are recorded to a different two letter code known as the "XT" code. According to the IATA, this code is used for instances when "amounts are combined in a tax box".

7. American Airlines' own internal accounting system also has identified instances where fees were collected and applied to either a "ZZ" code or to a non-existent code[1]. These codes are generally referred to within American Airlines' accounting system as either "ZZ" or "invalid codes".

8. Within the documents provided by counsel, there are certain reports which purport to summarize the amounts of "XT", "ZZ" and invalid codes for the 2000 time period. According to the these documents,[2] the totals for 2000 are as follows:

| | |
|---|---|
| "XT" Collections | $12,696,592 |
| "ZZ" Code Collections | $7,867,538 |
| Invalid Code Collections | $3,886,198 |
| Total Collections | $24,450,328 |

9. The available documents indicate that at least some portion of the monies recorded using these tax codes relate to either Agricultural or Immigration Fees. According to

[1] The available documents suggest that the "ZZ" code was used for certain types of tickets where American Airlines' employees could not determine the actual code for the fee being collected. In contrast, the use of an invalid code represents the recording to non-existent codes that are not assigned to a specific type of fee.

[2] See schedules entitled "Monthly Tax/PFC Report" for 2000. (AA18327-AA18852). Amounts shown for "XT" accounts are net of refunds. Other amounts include only "Sale" transactions as "Refunds" appear to reflect amounts transferred to the "XT" account.

the audit work papers, instead of investigating each ticket individually to identify the specific tax codes that should have been used, American Airlines allocates the monies recorded within these codes based upon a methodology that it created.

10. The audit work papers and American Airlines' policies indicate that the methodology relies upon the selection of a sample of 65 tickets each month for each tax code category (i.e. "XT" and/or "ZZ") [3]. For each ticket in the sample that it can locate, American Airlines' employees perform the necessary research to determine the correct codes that should have been used to record the tax receipts. Once the testing is completed, American Airlines uses the results of this testing to determine a pro-rata allocation of all monies within the "XT" or "ZZ" code. In other words, if 5% of the fees within a sample were related to the "XY" code, then American Airlines would transfer 5% of the total fees recorded within the "XT" or "ZZ" code to the accounts used to record the "XY" fees.

11. The manner in which the testing of the "XT" account has been performed raises questions about the allocation methodology used by American Airlines. For example, various documents indicate that American Airlines routinely tested fewer than the 65 tickets required by its own methodology. I understand (from representations made by American Airlines during the course of this litigation) that this occurs because there is insufficient information on some of the selected tickets to determine the reason for the collection of the fee at the time of the ticket sale. In those cases, those tickets are excluded from the sample. In addition, American Airlines' own policies indicate that the number of tickets selected for this sample is constant (65 per month) regardless of the number of transactions recorded in the "XT" or "ZZ" codes during the month. The use of the same sample size each month (as opposed to determining the sample size based upon the size and other characteristics of the population) is unusual. Usually, the size of the sample is dependent upon the size of the population being sampled.

12. It is possible (although not certain) that the nature of the sampling, the types of fees being allocated and the exclusion of some records from the sample could have an effect on the validity of American Airlines' methodology. Further investigation is needed to determine if the methodology used by American Airlines is appropriate.

13. To the best of my knowledge, there has been no detailed effort by the Government to perform any type of review to ensure that the methodology accurately allocates the fees from the "XT", "ZZ" and invalid code accounts.

---

[3] For certain periods of time, the available documents suggest American Airlines combined the "XT" and "ZZ" testing into a single population from which 65 tickets were selected. At other points in time, each population appears to have been tested separately. While I do not know how the invalid codes were tested, it appears likely that they were included as part of the testing of the "ZZ" accounts.

14. Because we lack the documents to perform a comprehensive review of the "XT" and "ZZ" categories, it is not possible to determine whether the allocations made by American Airlines result in an accurate remittance of monies collected under the Immigration and Agricultural Fee programs. Additional documents are needed to perform this testing and to reach a conclusion on the appropriateness and accuracy of American Airlines' allocation. Without these documents, it is not possible to determine whether the allocations made by American Airlines result in an accurate remittance of monies to the Government for the Immigration and Agricultural Fee programs.

15. I believe that the information provided within this affidavit is correct to a reasonable degree of certainty.

Bernard F. Woolfley
Director
Navigant Consulting, Inc.