**U.S. Department of Justice**
*Immigration and Naturalization Service*

# Immigration User Fee Remittance

# Report of Compliance

# On

# *AMERICAN AIRLINES*

Review Period
July 1, 2000 to December 31, 2001

Review Dates:

January 14-18, 2002

Of the 586 qualifying tickets audited for the **Customs** air passenger user fee collections compliance, the number of tickets with no evidence of fee collection or remittance was 7. The associated error rate is 1.19%. The resulting amount due to Customs is $ 350,248.31.

Recommendation: The additional liability amounts mentioned above should be remitted. Copies of the noncompliance tickets were given to the AA Senior Financial Analyst so that measures can be implemented to improve collections compliance.

2. Finding: During our review we noted that APHIS passenger user fees were not recorded for travel segment destinations in the US that originate in the Caribbean. The auditee mentioned that the programmed geographical matrix did not include the Caribbean as a qualifying origin for user fees.

In many cases, user fee amounts recorded for APHIS included old rates. The auditee mentioned that these trips involved geographical matrices with the old rate tables (used when American Airlines serviced those city pairs) were accessed by the computer.

No monthly detailed report of employee pleasure travel is produced to substantiate the total amount booked to the APHIS liability account. The auditors requested that a detailed report (for July 2001 payroll deductions) be produced to verify the accuracy of the general ledger entry. We reviewed this report and determined that AA should have remitted APHIS passenger user fees totaling $68,384.16. The NRSA journal entry for this period was $42,563.80. The liability amount related to this month was $25,820.36. We applied this error rate of 62.24% to the NRSA journal entries covering November 2000 through December 2001. The additional liability amount due is $246,455.09.

Recommendation: The additional liability amounts mentioned above should be remitted.

AA should ensure that all qualifying origin points are included in the NRSA grid and computation tables so that APHIS user fees are properly collected and remitted from employee pleasure travelers. **Note: AA informed us that the tax table amounts were corrected for travel effective February 1, 2002.**

AA should prepare a monthly summary of payroll deduction activity to NRSA to provide for an audit trail to the APHIS general ledger account.

3. Finding: AA performs a monthly sample of flight coupons as a means of determining a redistribution scheme for miscellaneous tax collections. The current sample selection is 65 tickets. In our opinion, this methodology is not statistically valid due to the small sample size. We believe that 279 sample items would provide a more representative sample of the population.

Recommendation: AA should raise the current sample size for their XT and ZZ analysis to a minimum of 279 sample items.

V. Financial Liability - APHIS

American Airlines' Financial Liability Due to APHIS Resulting from a User Fee Audit

| QUARTER ENDED | PASSENGER LIABILITY |
|---|---|
| | |
| Dec-00 | $104,373.88 |
| Mar-01 | 122,630.62 |
| Jun-01 | 135,253.08 |
| Sep-01 | 125,923.46 |
| Dec-01 | 104,210.81 |
| TOTALS | $592,391.85 |

DATE DUE: April 1, 2002

**Note: AA informed us they sent a check of $597,306.76 to cover the audit liability. AA should take a credit of $4,914.91 on their next APHIS passenger user fee remittance.**

# INS Review of User Fees Remittances

By
Eugene Schulman and Shirley Harrison

## American Airlines

Review Period:
July 1, 2000 to December 31, 2001

Dates of Review:
January 14-18, 2002

U.S. Department of Justice
Immigration and Naturalization Service

arrivals (revenue only) was found to be not reliable, so this report could not be used to analyze the American Airlines' passenger arrival totals for the period.

INS further traced auditor coupons from carrier sale channels to the corresponding report batch summary for these sales channels: Airline Reporting Corporation (ARC); Airport Ticket Office (ATO); City Ticket Office (CTO); and Billing and Settlement Plan (BSP).

| REPORTS | ISSUE DATE | TICKET # | TRACED/FLIGHT |
|---|---|---|---|
| ARC | 3-23-2001 | 001-7166834938 | YES/MEX-DFW |
| CTO | 6-26-2001 | 001-2177584871 | YES/LIM-MIA |
| ATO | 6-27-2001 | 001-2177615035 | YES/LIM-MIA |
| | 2-10-2001 | 001-3462601575 | YES/MEX-DFW |
| BSP | 6-30-2001 | 001-3312486815 | YES/LIM-MIA |
| | 6-22-2001 | 001-3312472760 | YES/LIM-MIA |
| | 2-12-2001 | 001-3462544312 | YES/MEX-DFW |

As in the INS review report for the period ending June 30, 2000 which was performed in September 2001, American Airlines indicated that their auditors sample 60-65 tickets per month to determine the proper allocation of taxes/user fees for ARC tickets that have a ZZ field totals for the month. Ernst and Young approved this sampling method. Futher, American Airlines indicated that the carrier adjusts underages/overages to provide the correct user fees for its accrual to the INS user fee liability account. As relates to BSPs, the carrier indicated that it receives tape submissions during the month which update the PATH revenue database system.

The INS representatives found a few exception tickets/facsimiles in the five (5) sample flights which indicated no evidence of the INS XY code on the ticket(s). However, American Airlines provided an audit trail through its revenue ledger screen print that verified the capture and recordation by sales date of INS IUF fees for tickets that did not originally, specify the codes on the face of the ticket(s).

INS audited tickets lifted from passengers for 5 randomly selected flights which were statistically representative of American Airlines' flight population for the review period. The sample flights were the following: December 15, 2000 from Frankfurt, Germany to Dallas, TX with 211 qualifying tickets and one (1) final exception; March 23, 2001 from Mexico to Miami, FL with 59 qualifying tickets and no exceptions; July 2, 2001 from Lima, Peru to Miami, FL with 221 qualifying tickets and no exceptions; December 14, 2001 from Toronto, Canada to St. Louis, MO (a former TWA flight now part of the American Airlines system) which had only 13

# Review of IUF Remittances
# by
# AMERICAN AIRLINES
# between
# July 1, 1998 and JUNE 30, 2000

*Reviewed September 18-22, 2000*

accounting month.

**Recording:** INS traced auditor coupons from carrier sale channels to the corresponding report batch summary for these sales channels: Airline Reporting Corporation (ARC); Airport Ticket Office (ATO); City Ticket Office (CTO); and Billing and Settlement Plan (BSP).

| REPORTS | DATE | TICKET # | Bank/Month/Cycle | Traced |
|---|---|---|---|---|
| ARC | 4/1/2000 | 001777810357 | 5,3,4,4 | YES |
| ATO DALLAS | 2/25/2000 | 0012102038310 | Not Applicable | YES |
| CTO Milan | 4/13/2000 | 0012168418521 | Not Applicable | YES |
| BSP Guatemala | 7/20/2000 | 0013379976905 | Not Applicable | YES |

American Airlines indicated that they receive four (4) electronic feeds from ARC and BSP each week. The data goes into a sales stream and then into their financial revenue system. Further, sales data that comes into ARC as "ZZ" is sampled each month. Typically, 60-65 tickets are sampled and the sampling provides the tax average per user fee applied against the "ZZ" total for the month. American Airlines' independent accounting firm, Ernst and Young, approved this sampling method.

American Airlines indicated that the INS user fee @ $6 per trip to the U.S. are hard coded into their revenue database system. Consequently, this carrier adjusts underages/overages to provide the correct user fees for its accrual to the INS user fee liability account.

As concerns BSPs, these sales reporting information are received at American Airlines via tape/manual input to the "PATH" database system. INS verified that the full amount of XY taxes collected was remitted including the difference due to currency conversion.

The INS representative found many exception tickets/facsimiles in the sample flights which indicated no evidence of the INS XY code on the ticket. However, American Airlines provided an audit trail through its revenue ledger screen print that verified the capture and recordation by sales date of INS IUF fees for tickets that did not originally, specify the XY codes on the face of the ticket(s).

**Collection:** INS audited tickets lifted from passengers for 9 randomly selected flights which were statistically representative of American Airlines' flight population for the review period. INS agreed during the review to substitute a September 15, 2000, sample flight in place of a similar flight dated June 5, 2000 (The flight was from Toronto, Canada to Chicago, Illinois.). Also, American Airlines produced ticket images for sample flight uplifted coupons derived from their Auditors Coupon Facsimile automated