**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| AMERICAN AIRLINES, INC.<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES OF AMERICA,<br><br>Defendant. | ) | Civil Action No. 04-1736<br>Judge Susan G. Braden |

**<u>PLAINTIFF'S REPLY IN SUPPORT OF IT MOTION FOR PROTECTIVE ORDER</u>**

Plaintiff American Airlines, Inc. ("AA") respectfully submits this reply in support of its motion for a protective order.

Perhaps in an effort to distract this Court from the one question that truly matters, the Government raises a myriad of irrelevant objections, including complaining about a purported delay by AA in producing documents, disputing the degree to which the Government auditors reviewed AA's XT and ZZ allocations during the audits, and complaining about who bears which costs of this litigation.[1] While AA and the Government disagree about all of these and many other issues raised in the Government's Opposition, there is no disagreement about the fundamental fact that the XT and ZZ allocations have absolutely no connection to the "errors" upon which the Government's assessments against AA were based.

As the Government admits, it wants to examine the XT and ZZ allocations, not to determine how many of the "errors" represent uncollected (and therefore illegally exacted) user fees, or even to determine in general how many user fees go uncollected by AA, but rather "to

[1] Although AA disagrees with many of the assertions in the Government's Opposition – especially the Government's inaccurate allegations of a purported delay by AA in producing documents – AA will not burden the Court at this time with responses to these irrelevant matters.

determine whether the Government has been receiving the *collected* user fees in the correct amounts." Gov't Opp. at 3 (emphasis added); *see also id*. at 8 (the Government claims it is "entitled to discovery into the amount of user fees, if any, that AA owed to the agencies when it made the disputed payment of 'uncollected user fees'"); *id*. at 7 ("AA bears the burden to establish that it paid the agencies a specific amount more than it owed in user fees"). In other words, the Government argues that, as a legal matter, the relevant damages inquiry is not limited to a determination of how many uncollected user fees the Government improperly forced AA to pay, but rather involves a determination of the total net amount of user fees AA should have paid to the Government.[2] Under the Government's legal theory, it may rely on any arguments – not just the XT and ZZ allocations – to show that AA somehow underpaid user fees in total and is therefore not entitled to any damages even if it was forced by the Government to pay some user fees it should not have. *E.g.*, Gov't Opp. at 4, 10.

In support of this novel argument, the Government relies on one sentence from *Merck & Co. v. United States*, 24 Cl. Ct. 73, 91 (1991): a plaintiff seeking a tax refund must "prove the correct amount of the tax, and any overpayment."[3] Gov't Opp. at 6. This basic proposition of tax law means that the Government may defeat a refund suit if the taxpayer has not shown he or she has overpaid taxes as a whole for the year in question, even if the taxpayer is successful in proving a specific refund claim. While this statement is accurate as far as it goes, the

[2] Both parties agree that the Government is entitled to argue that some of the "errors" might represent collected (as opposed to uncollected) user fees, and that any assessments based on such "errors" would not constitute illegal exaction damages in this case. AA therefore agrees with the Government's claim that it "should at least have the opportunity to look behind the audit papers and inquire into whether AA in fact collected the user fees it now claims not to have collected." Gov't Opp. at 7. The issue here, however, is whether the Government should be entitled to take discovery not just of that issue, but of all issues relating in any way to the amount of user fees AA paid.

[3] AA questions whether this proposition applies to illegal exaction suits outside of the tax refund setting. The Government has not cited, and AA has been unable to find, any such cases.

Government has grossly oversimplified the issue. Even a cursory review of the law on this subject reveals that the Government's position is wrong.

*Mahoney v. United States*, 223 Ct. Cl. 713 (1980), for example, provides a far more complete and accurate statement of the law. *See also McLennan v. United States*, 23 Cl. Ct. 99, 105-07 (1991). Like *Merck*, *Mahoney* is also a federal tax refund case. However, unlike *Merck*, *Mahoney* specifically addressed a situation in which the Government attempted to reduce or eliminate the taxpayer's refund by arguing that even if the taxpayer's specific refund arguments were valid, it would not be due any refund because – for reasons unrelated to the taxpayer's refund arguments – it underpaid its taxes in the year in question. The court in *Mahoney* affirmed the trial court's denial of the Government's request to amend its answer to include as defenses arguments that the taxpayer had underpaid tax for reasons unrelated to its refund claim. That is exactly what the Government is trying to do here, and this Court should reject that attempt for the same reasons expressed in *Mahoney*, plus some additional ones.

First, although the Government is entitled to argue that the taxpayer has not paid the total correct amount of tax even if the reason for such underpayment is unrelated to the taxpayer's refund claim, such a defense is an offset (or, if the statute of limitations has not run, possibly a counterclaim). *Mahoney*, 223 Ct. Cl. at 714; *see also Buder v. United States*, 7 F.3d 1382, 1386 (8th Cir. 1993) (affirming district court's refusal to consider the Government's argument that taxpayer had not overpaid its taxes in total and was therefore not entitled to a refund, because the "issue was never raised by the IRS during its audit, and the Government never pleaded or

amended its complaint to include the setoff defense").[4] The Government has not pled, or even attempted to plead, any offset or counterclaim in this case, and for the reasons stated in AA's Motion, it has waived its right to do so. AA's Mot. at 5; *see also Bank of America v. United States*, 217 Ct. Cl. 731 (1978) (affirming trial court's denial of the Government's attempt to amend its answer to include an offset based on the same tax and years at issue in the taxpayer's refund suit); *St. Louis-San Francisco Ry. Co. v. United States*, 189 Ct. Cl. 280, 282 (1969) (tax refund case; "we now warn that any undue delay on the part of the government will result in the denial of the right to raise setoff defenses. In other words, we hold that the defense must be raised at the earliest possible stage in the proceedings."); *Buder*, 7 F.3d at 1387 ("we deem the Government to have waived its setoff defense").

Second, *Mahoney* makes clear that – despite the general notion that a taxpayer bears the burden of proving the correct amount of the tax – a taxpayer is not obligated to affirmatively prove that every aspect of the tax it paid was correct, unless and until the Government makes a sufficient showing to the contrary:

> [B]efore the taxpayer has the burden of proving the correctness of the challenged item . . . , we think that the government has the burden of going forward and showing that there is a reasonable basis in fact or in law for its setoff defense. By this we mean that the government has to demonstrate that it has some concrete and positive evidence, as opposed to a mere theoretical argument, that there is some substance to its claim and is not a mere fishing expedition or a method of discouraging taxpayers from seeking refunds on meritorious claims because of the cost that would result in proving each and every item involved in a tax return. In a case where the taxpayer raises specific issues as to a tax, and there is no good reason for the government to challenge the remainder of the items going to make up the tax, the government should not be able to cast the burden on the taxpayer

---

[4] Common sense also dictates that the approach in *Mahoney* has to be correct. Without formal notice of what elements of tax the Government was challenging, every tax refund trial would become hopelessly bogged down with lengthy proofs by the taxpayer of the correctness of every single element of his or her tax return, including the calculation of every dollar of income, the entitlement to each and every deduction, etc.

> of proving each and every item. The right of allowing an offset under these situations is an equitable right given to the government based on the equitable principles and, as such, should not be abused.

223 Ct. Cl. at 715 (*quoting Missouri Pacific R.R. v. United States*, 168 Ct. Cl. 86, 91 (1964)); *see also McLennan*, 23 Cl. Ct. at 105-07. The Government must have "concrete and positive evidence" of its claims at the time it pleads the offset and without such evidence, claims for offset may not be pled, even if "they might still prove founded on some theory if all the facts were known." *Mahoney*, 223 Ct. Cl. at 718, 719. Here, the Government has no such evidence. Indeed, the most it can say is that the XT and ZZ allocation sample size might have been too small. Gov't Opp. at 3. The Government has no evidence even remotely suggesting that the allocations were incorrect, let alone any evidence suggesting they resulted in an *under*payment (as opposed to an overpayment) of the user fees.[5]

Third, the Government must possess this "concrete and positive evidence" and plead its offset "before it initiates discovery into matters relevant only as to establishments of offsets." *Mahoney*, 223 Ct. Cl. at 718, 719. Moreover, the Government may not use a refund litigation as an opportunity to reaudit the taxpayer:

> Discovery by defendant cannot be regarded as a means of conducting a reaudit, as defendant seems to wish to do here. Discovery in the course of litigation is a costly and cumbersome substitute for a true audit, and is abused if employed to that end. The revenue agent can poke into everything without being required to have even a suspicion that anything is not as it should be. A taxpayer should not be subjected to this more than once. Counsel here must use the very different tools he is given for the very different purposes of adversary litigation.

---

[5] The Government's expert states: "It is possible (although not certain) that the nature of the sampling, the types of fees being allocated and the exclusion of some records from the sample could have an effect on the validity of American Airlines' methodology. Further investigation is needed to determine if the methodology used by American Airlines is appropriate." Woolfley Affidavit ¶ 12. Under *Mahoney*, such a "theoretical argument" is insufficient. "Concrete and positive evidence" is required before an offset defense may be pled. In any event, this issue is somewhat academic because the Government has not even attempted to plead such a defense.

*Id*. at 719. For this reason, the Government entirely misses the point when it argues that it did not carefully review AA's XT and ZZ allocations during the audits, and that in any event it is not bound by what it determined in the audits. Gov't Opp. at 7-9. Even if this were true, it is irrelevant. AA's lawsuit to recover *uncollected* user fees that were illegally exacted from it does not entitled to the Government to reopen its prior audit in an attempt to find new deficiencies in the amounts AA paid to the Government in *collected* user fees. Under *Mahoney*, that is true regardless of how carefully the Government examined the proposed new deficiency during audit, or whether it examined the issue at all. The above passage from *Mahoney* also dispenses with the Government's claim that this Court need not be concerned with the burden this added discovery will have on AA. *See* Gov't Opp. at 9.

For all these reasons, the Government is not entitled to take discovery on broad issues relating to the total user fees AA paid and should have paid. The Government claims that this is an illegal exaction case, not a "confirmed error" case. Gov't Opp. at 6. However, AA's claim is expressly limited to the "confirmed errors." The Government is not entitled to turn this case into a larger dispute about the overall user fees AA paid to the agencies, unless and until it pleads its allegations as an offset (which is has not done and is no longer entitled to do) and unless and until it can come forward with "concrete and positive evidence" of its claim of offset (which it has not and cannot do). Independently, either of these shortcomings is fatal to the Government's ability to advance its "total user fee" argument and its ability to take discovery regarding that theory.

**CONCLUSION**

For these reasons, AA respectfully asks this Court to issue a protective order prohibiting the Government from taking discovery regarding the XT and ZZ allocations.

Respectfully submitted,

/s/ Adam P. Feinberg

Adam P. Feinberg
MILLER & CHEVALIER CHARTERED
655 Fifteenth Street, N.W.
Washington, D.C. 20005
(202) 626-6087
(202) 628-0858 (Facsimile)

Counsel for Plaintiff

*Of Counsel*:

Robert K. Huffman
MILLER & CHEVALIER CHARTERED
655 Fifteenth Street, N.W.
Washington, D.C. 20005
(202) 626-5877
(202) 628-0858 (Facsimile)

David R. Hamill
ARENT FOX
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036
(202) 857-8940
(202) 857-6395 (Facsimile)

Dated: November 17, 2006