IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| AMERICAN AIRLINES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 04-1736C |
| v. | ) | (Judge Braden) |
| | ) | |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

DEFENDANT'S CORRECTED MOTION FOR DISCOVERY

Pursuant to the Court's order dated November 30, 2006, defendant, the United States, respectfully submits this motion for leave to conduct discovery concerning the expert report served upon us by plaintiff, American Airlines, Inc., on February 1, 2007, in anticipation of the evidentiary damages hearing that is scheduled for May 14-16, 2007.

The Court determined in the November 30 order, among other things, that, "[s]ince the court has determined that the Government's imposition of liability for uncollected user fees was unlawful, how Plaintiff collected those fees is irrelevant. What is relevant at this juncture is the amount that Plaintiff has paid to the Government." 11/30/06 Order 7. Although we have not sought reconsideration, we respectfully note, in the interest of clarity, our continued disagreement with that conclusion. In our view, the Government's liability, if any, for user fees that American alleges it did not collect, but which American later remitted to the Government (i.e., the alleged arithmetic difference between American's user fee collections and its remittances, during the years at issue in this case), cannot be properly quantified without, among other things, reviewing all of the avenues by which, and all of the accounts in which, the amounts collected by American as user fees and taxes were recorded and credited (or not credited) to American's internal accounts that were periodically swept for remittance to the Government during the years at issue.

(We also note that the Government's affirmative defenses of accord and satisfaction, equitable estoppel, laches, and waiver, Def. Ans. ¶¶ 90-93, must be adjudicated before a final judgment can be entered upon American's claims for relief. RCFC 54(b), 58; Stillman v. Travelers Ins. Co., 88 F.3d 911, 913-14 (11th Cir. 1996).)

We understand the Court's November 30 order, however, as directing us to limit our discovery requests at this time to matters that could bear specifically upon the accuracy or reliability of the opinions expressed by American's experts from Deloitte Financial Advisory Services LLP, that (i) "American's accounting processes for User Fees are appropriately designed and structured to assure that any User Fees collected are remitted to the Government," and (ii) "[w]ith one exception," there exists "no . . . evidence" that user fees were, in fact, collected for any of the specific, individual tickets which the Government auditors included in their audit samples and counted as non-collection "errors," in extrapolating American's non-collection rates. Pl. Exp. Rep. 4.

Assuming relevance is defined in that manner, we request discovery as follows:

1. Shortly after serving its expert report, American provided a compact disc containing electronic copies of what we understand to be documents upon which Deloitte relied. In order to fully understand what is (and is not) on the CD, we need to depose a knowledgeable witness concerning how and why the documents were gathered and, e.g., whether Deloitte discovered that certain types or categories of documents, which it otherwise might have examined, do not exist. Depending upon the testimony, this deposition might also lead us to request additional documents upon which Deloitte relied, or of which it is aware, that have not yet been produced.

2. The Deloitte report is written in the present tense, inasmuch as Deloitte examined American's existing accounting procedures relating to user fees, as of 2006. The most recent remittance of user fees that is alleged in the complaint, however, was made in September 2003. Compl. ¶¶ 45, 68. American's earliest remittance of user fees that are at issue in this litigation occurred in December 1998 and covered an audit period from July 1996 through June 1998. Id. ¶¶ 48, 52. In its motion for partial summary judgment concerning liability, American raised additional allegations, beyond the scope of its complaint, concerning payments it made in 2005.

Accordingly, in order to assess the reliability and probative weight of the Deloitte report, we need American to produce to us all other versions or iterations, from 1996 through 2005, of the internal American documentation upon which Deloitte relied. These include, but are not necessarily limited to, all versions existing or created in the relevant years of: (i) any policy and procedures documents examined or relied upon by Deloitte for this matter; (ii) flow charts relied upon; (iii) documents listing the searchable fields in internal accounting records; (iv) "Monthly Tax/PFC Reports" (Deloitte mentions a single such report, for October 2006); (v) "MSR – Month End Detail by Form/Serial" (Deloitte cites one dated January 2003); (vi) "MSR – Station/Type Recap Report" (same); (vii) "US Taxes and Fees For International Travel" (Deloitte cites a version dated January 2003); (viii) "Transportation Tax Process" (Deloitte cites a version dated August 2004); (ix) "Exception Report" (Deloitte cites one dated May 2003); and (x) all tax audit records and reports from the relevant years (Deloitte cites tax audit documents from January 2007). The preceding list should not be construed as exhaustive.

3. Similarly, in order for us to fairly assess Deloitte's conclusions with respect to all of the years at issue in this case, American should produce, if and to the extent it has not already

done so, all of its internal documentation (not only the information that was provided to the auditors) relating to all of the individual tickets which were identified as non-collection "errors" in any of the Government audits at issue in the case.

4. Finally, footnote 11 of the Deloitte report describes American's "XT" and "ZZ" accounts in substantially the same manner as we have previously described them to the Court, and, contrary to Deloitte's contention, illustrates why we need discovery concerning those accounts. That footnote reads in full:

> Sometimes instead of using individual tax codes such as XA or XY, combined ticket tax codes (e.g., XT or ZZ) are used to record the multiple taxes collected on a ticket. The combined tax codes are typically used when collecting multiple taxes and fees as the tickets have a limited number of input fields/spaces to record the details of the taxes collected. When combined tax codes are used, the breakdown of the taxes collected are recorded in a detailed tax record and printed in the "FARE CALC" line section of the ticket. During the automated processing of tickets, a program in the PATH database reads the detailed tax record and allocates the taxes collected to the relevant tax codes, including XA and XY. American uses a sampling process for those tickets where a detailed tax record is not available. Since the Audit Errors do not include any combined ticket tax codes without a detailed tax record, this sampling process is not relevant in this matter.

Pl. Exp. Rep. 7 n.11 (emphasis added).

The final sentence above is incorrect in two respects. Deloitte argues that the sampling-based allocation methodology for the XT and ZZ accounts is "not relevant" because none of the specific non-collection errors identified in the Government audits stemmed from the XT or ZZ accounts. The footnote itself confirms, however, that the appropriateness and consistency of the XT/ZZ allocation methodology plainly is relevant to the first Deloitte opinion quoted above, namely, that "American's accounting processes for User Fees are appropriately designed and

structured to assure that any User Fees collected are remitted to the Government." Id. at 4 (emphasis added). We respectfully reiterate, therefore, our request for "[a]ll documents, to include written policies, procedures, analyses, audit plans, work papers, spreadsheets, memoranda, reports, etc., relating to any sample testing of the XT or ZZ accounts, and the allocation methodologies for those specific accounts." See 11/30/06 Order 6.

CONCLUSION

Accordingly, we respectfully request the Court to allow us to conduct discovery in the manner, and concerning the topics, described above, upon an expedited basis, to allow the timely completion of defendant's expert report, which is due on March 15, 2007.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

s/Jeanne E. Davidson
by Donald E. Kinner
JEANNE E. DAVIDSON
Acting Director

s/Kyle Chadwick
KYLE CHADWICK
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification, 8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tele: (202) 616-0476
Fax: (202) 305-7644

Attorneys for Defendant

OF COUNSEL:

ANDREW S. KOSEGI
Attorney
U.S. Customs and Border Protection
Indianapolis, IN

CYNTHIA A. KOCH
Senior Counsel
United States Department of Agriculture
Washington, DC

February 16, 2007 (corrected)