# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| AMERICAN AIRLINES, INC.<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES OF AMERICA,<br><br>Defendant. | Civil Action No. 04-1736<br>Judge Susan G. Braden |

## SECOND DECLARATION OF MONTY HOBBS

I, Monty Hobbs, hereby declare as follows:

1. I am over the age of 18 years and competent to testify to the following facts, of which I have personal knowledge.

2. From February 1995 until November 2005, I was employed by American Airlines, Inc. ("AA") in Forth Worth, Texas. During my entire tenure with AA, I have worked in the Revenue Accounting department. From October 2001 until I left AA, my position was Manager, Revenue Accounting.

3. I am familiar with the "Immigration User Fee" imposed by 8 U.S.C. § 1356 and 8 C.F.R. § 286.1-286.9, and with the "APHIS User Fee" imposed by 21 U.S.C. § 136a and 7 C.F.R. § 354.3(f).

4. The Government has audited AA's compliance in connection with the Immigration User Fee and the APHIS User Fee on approximately an annual or biannual basis (the "User Fee Audits"). During the time I was Manager, Revenue Accounting at AA, I was responsible for handling the Government's User Fee Audits and I was the Government's primary

contact at AA regarding those audits.

5. For each of the User Fee Audits, the Government auditors tested AA's user fee collection compliance by reviewing all of the tickets from a sampling of AA and American Eagle flights during the relevant period. The Government auditors then checked each ticket for evidence that the user fees had been collected. A ticket lacking such evidence (and for which no other evidence of collection could be found) was deemed an "error" by the Government auditors.

6. For each User Fee Audit I was involved in, AA was given the opportunity to research its records to determine if it had in fact collected a user fee in connection with any tickets representing such an "error." For any tickets that were not marked to reflect collection of the user fees, it is extremely unlikely that AA collected the user fees at the time of ticketing. This is due to the automated nature of AA's ticketing process which automatically marks the ticket to reflect any taxes or user fees that are collected, in accordance with industry standards. Therefore, the only way AA could have collected a user fees for the tickets deemed "errors" that were not marked to reflect collection would have been to do so after the time of ticketing, *i.e.*, at the airport before the departure of the outbound or return flight.

7. To determine whether AA collected a user fee after the time of ticketing, I conducted a search of AA's records to determine any amounts paid to AA in connection with the "errors" at issue in each User Fee Audit that I was involved in. Specifically, I conducted searches of AA's Miscellaneous Sales Receipts ("MSRs"). An MSR is used by AA to collect funds from customers other than in connection with the original issuance of a ticket. For example, MSRs are used to collect for change fees, Admiral's Club passes, excess baggage charges, user fees, and many other types of charges. There is no other way for AA to collect

funds from a passenger after the time of ticketing, other than by using an MSR. For each User Fee Audit I was involved in, I searched AA's electronic database containing the MSR records. I searched both by passenger name and by ticket number. My searches did not yield any user fees paid in connection with any of the "errors" in the User Fee Audits. However, on rare occasion, my searches did uncover an MSR that evidenced the collection of a user fee in connection with a ticket the Government was considering calling an "error." In every such case, I showed the MSR to the Government auditors, and they removed the ticket from the list of potential errors. Accordingly, AA's MSR records reflect that AA did not collect the user fees after the time of ticketing in connection with any tickets included as "errors" in any User Fee Audits that I was involved in.

8. For these reasons, it is my opinion that it is highly unlikely that AA collected the user fees in connection with any of the tickets deemed to be "errors" in the User Fee Audits I was involved with, unless the ticket was marked to reflect collection.

9. It my understanding that AA conducted similar searches in connection with the User Fee Audits that occurred prior to my becoming Manager, Revenue Accounting. I know this from my work in the Revenue Accounting department before I became Manager, and this was a standard practice in the department.

I declare under penalty of perjury that the foregoing is true and correct. Executed on this 23rd day of May, 2007.

Monty Hobbs

Monty Hobbs