IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| AMERICAN AIRLINES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 04-1736C |
| v. | ) | (Judge Braden) |
| | ) | |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

DEFENDANT'S RESPONSES TO PLAINTIFF'S INTERROGATORIES No. 1-4

Pursuant to Rule 33 of the Court's Rules, and agreement of counsel, defendant, the United States, responds as follows to the first four interrogatories in the discovery requests that plaintiff served by hand on April 6, 2007. (The parties have stipulated that we need not respond to the other discovery requests that plaintiff served on that date.)

**Exhibit 1**

RESPONSES TO INTERROGATORIES

1. State the basis for your affirmative defense of accord and satisfaction.

Response:

We assert this defense with respect to the claims involving the (i) immigration inspection user fee audits covering (a) July 1998 through June 2000, and (b) July 2000 through December 2001; and (ii) the AQI user fee audits covering (a) July 1996 through June 1998, (b) July 1998 through June 2000, (c) October 2000 through December 2001, and (d) January through December 2002. A claim is discharged by accord and satisfaction when "some performance different from that which was claimed as due is rendered and such substituted performance is accepted by the claimant as full satisfaction of his claim." Community Heating & Plumbing Co. v. Kelso, 987 F.2d 1575, 1581 (Fed. Cir. 1993). This defense is essentially contractual. Its elements are authority to contract, relevant subject matter, an objectively expressed meeting of the minds, and consideration. Mil-Spec Contrs., Inc. v. United States, 835 F.2d 865, 867 (Fed. Cir. 1987); Brock & Blevins Co. v. United States, 170 Ct. Cl. 52, 59, 343 F.2d 951, 955 (1965).

By letter dated November 28, 2000, the INS advised AA it would "not be charged interest" upon the amount of immigration user fees that had been found to be due for the period from July 1998 through June 2000 ($412,855), provided AA made payment within 30 days. By letter dated May 3, 2002, the INS advised AA it would not be charged interest upon the amount of immigration user fees owed for July 2000 through December 2001 ($160,878), if AA paid within 30 days. It was also the policy of the APHIS auditing office to waive interest in return for prompt payment. That policy was followed for AA's payment of $150,572.48 in December 1998. Additionally, in undated correspondence in 2000, APHIS advised AA it would not be charged

interest on the amount of AQI user fees owed for July 1998 through June 2000 ($299,106.51), if AA paid "by November 15, 2000." By letter dated April 26, 2002, APHIS advised AA it would not be charged interest on the amount of AQI user fees owed for October 2000 through December 2001 ($345,936.76), if AA paid "by April 1, 2002." In each instance, AA remitted its audit liability in full, on or before the date indicated, and the agency assessed no interest. Because (i) AA and the authorized Government representatives expressly agreed that the parties would exchange consideration, viz., prompt and full payment by AA of its audit liabilities, in exchange for the agencies' waivers of interest, and (ii) both parties performed as agreed, any potential claims by either party with respect to the amounts owed by AA, including AA's illegal exaction claims, were extinguished by accord and satisfaction. See generally 29 Williston On Contracts § 73:27 (4th ed. 2006). "If plaintiff[] had intended to leave a claim . . . open, [its] intention to do so should have been made manifest and explicit . . . ." Cannon Constr. Co. v. United States, 162 Ct. Cl. 94, 319 F.2d 173, 177 (1963).

Separately, in April 2003, APHIS directed AA to remit $773,109.18 to resolve the AQI user fee audit covering calendar year 2002. In May 2003, AA appealed the amount of the audit liability. It did not challenge the existence of a liability. A letter to AA from APHIS dated August 14, 2003 memorializes the parties' settlement of that appeal, by agreement upon "a final audit liability amount of $298,298.37." Accordingly, the CY 2002 audit was resolved in exchange for AA's payment of the stated amount. Again, the parties' exchange of negotiated consideration conclusively resolved all claims by either party with respect to the subject matter of the audit; and accord and satisfaction bars AA from recovering the amount that it agreed to pay, and the Government agreed to accept, in settlement.

2. State the basis for your affirmative defense of equitable estoppel.

Response:

Equitable estoppel bars recovery where a claimant "acquiesced in the [underlying] transaction in such a manner as to change the relationship of the parties and make its repudiation of the proceedings contrary to equity and good conscience." Stevens Mfg. Co. v. United States, 8 F. Supp. 720, 80 Ct. Cl. 183, 192-93 (1934), quoted in Emeco Indus, Inc. v. United States, 202 Ct. Cl. 1006, 485 F.2d 652, 657 (1973); accord Union Pac. R.R. v. United States, 847 F.2d 1567, 1570 (Fed. Cir. 1988).

In designing each and every audit at issue in this case, the Government auditors, with AA's full knowledge and acquiescence, adopted the premise that instances in which AA failed to document the collection of a user fee would be deemed instances of "non-collection" and would be included in the statistical estimates of the "error rates." Thus, had AA, in fact, collected a user fee for a particular ticket in the audit, but failed to document the collection for the auditors for any reason (e.g., clerical error), the auditors would not have learned of this – nor did they have reason to care. Had the Government known at the time of the audits that AA would later claim it was not legally liable for "uncollected" user fees – and that AA would rely upon the user fee audit reports in seeking damages based upon every supposed instance of "non-collection" represented by the statistically derived "error rates" – the agencies could have, and probably would have, taken some or all of the following steps.

CBP and APHIS could have revised their user fee regulations, or sought legislative changes, to clarify their authority to require air carriers to remit user fee amounts that they have failed to collect. APHIS, in particular, had an especially clear opportunity to obtain such action

by Congress during the drafting of the 1996 farm bill. See Pub. L. No. 104-127, 110 Stat. 888 (1996); H.R. Conf. Rep. No. 104-494, at 474 (1996), reprinted in 1996 U.S.C.C.A.N. 683, 843. Independently, the agencies' auditors could have (i) performed additional reviews of AA's internal controls (similar to the close review performed on importers to confirm proper payment of import duties), to identify problem areas that could be resulting in failures to collect user fees; (ii) demanded fuller explanations for, or additional proof of, incidents of non-collection; and (iii) expressly qualified the audit results, to clarify that there was no affirmative "finding" that AA did not collect the fees that it told the auditors it did not collect. Additionally, when prescribing and periodically revising the amount of the AQI user fee, the Department of Agriculture could have factored in an increment for expected shortfalls in collections by airlines, had it known of AA's denial of liability. By remaining silent, AA inequitably deprived the Government of these logical options. Affiants Daune Robinson, Barbara Blessing, and Kevin Shea may be called to testify to the above.

3. State the basis for your affirmative defense of laches.

Response:

Laches will bar recovery if "unreasonable and unexcused" delay by plaintiff in asserting its claims results in either litigating or economic prejudice to defendant. Cornetta v. United States, 851 F.2d 1372, 1377-78 (Fed. Cir. 1988) (en banc). AA offers no justification for delaying the assertion of its illegal exaction claims until well after the audits at issue were concluded (except the final two audits, which were first properly alleged in February 2007, in the amended complaint, and were conducted during this litigation, prior to the resolution of the motions regarding liability).

The prejudice to the Government caused directly by AA's dilatory pursuit of its claims substantially resembles the prejudice identified above, with respect to equitable estoppel. The Government has suffered prejudice in the context of this litigation because no audits were conducted for the purpose of verifying AA's non-collection of user fees, for those audited tickets for which AA reported non-collection of a fee. Therefore, we lack the audit results or other data necessary to test AA's allegations that it made remittances, in particular amounts, of "uncollected" fees. Similarly, if AA recovers damages, CBP and APHIS will suffer economic prejudice as a result of having been deprived of their opportunities to avoid liability by amending their regulations; obtaining clarifications from Congress of the respective user fee statutes; conducting more detailed user fee audits; increasing the user fee rate (in APHIS's case); or a combination of these. Affiants Daune Robinson, Barbara Blessing, and Kevin Shea may be called to testify to the above.

4. State the basis for your affirmative defense of waiver.

Response:

Absent an express statutory prohibition (which does not exist here), a party may waive regulatory, statutory, and even constitutional rights or claims. Madigan v. Hobin Lumber Co., 986 F.2d 1401, 1403 (Fed. Cir.1993). Recovery is barred provided the waiver of a claim was knowing and voluntary. Seaboard Lumber Co. v. United States, 903 F.2d 1560, 1563 (Fed. Cir. 1980) (citing Brookhard v. Janis, 384 U.S. 1, 4, 5 (1966)). By its conduct during the planning and conduct of the user fee audits, and by remitting the amounts that the auditors determined were owed, AA accepted voluntarily, and without reservation or objection, the premise that it was liable for fees that it should have collected from covered passengers and remitted to the Government, but which were not remitted, for any reason, regardless of whether those fees had been collected. AA did this not once, but repeatedly. Moreover, it had full knowledge of the user fee statutes and regulations the entire time. Accordingly, AA knowingly, voluntarily, and repeatedly forswore the illegal exaction theories that it advances now. Affiants Dawne Robinson, Barbara Blessing, and Kevin Shea may be called to testify to the above.

PETER D. KEISLER
Assistant Attorney General

JEANNE E. DAVIDSON
Director

OF COUNSEL:

ANDREW S. KOSEGI
Attorney
U.S. Customs and Border
Protection
Indianapolis, IN

CYNTHIA A. KOCH
Senior Counsel
United States Department of
Agriculture
Washington, DC

May 7, 2007

KYLE CHADWICK
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification, 8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tele: (202) 305-7561
Fax: (202) 305-7644

Attorneys for Defendant

CERTIFICATE OF SERVICE

I certify under penalty of perjury that on this 7th day of May 2007, I caused the attached discovery responses to be served by U.S. mail upon:

Adam P. Feinberg
Miller & Chevalier
655 15th Street, N.W.
Suite 900, Metro Square
Washington, DC 20005-2701

_______________________