IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| AMERICAN AIRLINES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 04-1736C |
| v. | ) | (Judge Braden) |
| | ) | |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S SECOND POST-HEARING BRIEF**

Pursuant to the Court's order from the bench on May 31, 2007, as amended on June 18, 2007, defendant, the United States, respectfully submits this second post-hearing brief, addressing count III of the second amended complaint filed by plaintiff, American Airlines, Inc., pursuant to prior leave of the Court, on June 4, 2007. Count III alleges that U.S. Customs and Border Protection ("CBP") illegally exacted $48,041 in interest and penalties from American, in connection with an immigration inspection user fee audit of international flights from January 1 through December 31, 2002. 2d Am. Compl. ¶¶ 44, 96-99. (In accordance with the May 31 order, the combined number of pages in our two post-hearing briefs is 10.)

I. Interest And Penalties Were Not Illegally Exacted From American

In its post-hearing brief, filed on June 15, 2007, American conspicuously fails to cite any judicial decisions that support count III. Pl. Br. 8-10. The only decisions American cites are inapposite. In both United States v. $277,000 United States Currency, 69 F.3d 1491(9th Cir. 1995), which was not an illegal exaction case, and Larson v. United States, 84 F. Supp. 2d 218 (D. Mass. 2000), cited in Pl. Br. 10, the courts ordered the Government to return to the plaintiffs interest that the Government had actually earned by investing the principal at issue.

Here, in sharp contrast, CBP did not earn interest in a bank account upon money paid by American. Instead, CBP imposed interest and penalties upon American, as the agency was entitled to do under the Debt Collection Act of 1982, 31 U.S.C. § 3717, and the immigration inspection user fee regulations, 8 C.F.R. § 286.5(b)(2). Both parties believed, when the interest and penalties were imposed, that the principal amount of user fees was owed by American to CBP. American could have avoided this imposition of garden variety interest and penalties simply by promptly paying the amount that CBP requested in correspondence dated July 17, 2003. See 2d Am. Compl. ¶ 43. Alternatively, American could have promptly filed suit to contest its liability for the principal amount. Instead, American neglected to make any response to CBP until American paid the principal, interest, and penalties on September 26, 2003, approximately 70 days after it was notified of the audit assessment. See id. ¶ 45.

American does not even contend, moreover, that its delay in remitting the user fees was in any way related to its subsequent legal challenge in this Court. American's payment of interest and penalties was thus caused by that delay – not, as American posits, "directly and proximately . . . by the Government's illegal exaction." Pl. Br. 9. No statute authorizes an award of interest under these circumstances, and, as in United States Shoe Corp. v. United States, 296 F.3d 1378 (Fed. Cir. 2002), an award of interest is not automatically available even if the underlying fee was unconstitutional, or otherwise unlawful.

## II. Interest Was Properly Calculated

Should the Court agree with American that its success upon its claim for illegal exaction of user fees automatically entitles American to recover, as well, the $12,010 in interest and $36,031 in penalties imposed by CBP following the audit in 2003, the Court need not reach

American's alternative claims that the calculation of the interest and the imposition of the penalty violated the Debt Collection Act. Id. ¶¶ 99.

Should it be necessary to address these contentions, American emphasizes that interest generally accrues under the Act "from the date . . . notice of the amount due is first mailed to the debtor," 31 U.S.C. § 3717(b)(2) (and that penalties may be imposed if an obligation becomes "more than 90 days past due," id. § 3717(e)(2)). American argues that the "notice" described in section 3717(b)(2) was provided only by CBP's July 17, 2003 letter, so that American's payment in September 2003 was fewer than 90 days overdue. 2d Am. Compl. ¶ 99. American's argument fails, however, because the implementing regulations duly promulgated by the Department of the Treasury ("Treasury") and the Department of Justice, see 31 U.S.C. § 3711(d), which American does not address in this respect, clarify that interest "shall accrue from the date of delinquency, or as otherwise provided by law." 31 C.F.R. § 901.9(b)(1) (emphasis added).

American simply ignores this specific statement in the Debt Collection Act's implementing regulations that the legally significant date is the "date of delinquency," however it is defined by applicable law. And, in the context of immigration user fee collections, the "date of delinquency" is established, "by law," as the date upon which an airline should have remitted to CBP the user fees from the applicable fiscal quarter. The immigration inspection user fee statute and regulations generally require airlines to remit user fees quarterly, within 31 days after the end of a quarter. 8 U.S.C. § 1356(f)(3); 8 C.F.R. § 286.5(b)(1). CBP's regulations further state that "[l]ate payments" are "subject to interest, penalty, and handling charges as provided" by the Debt Collection Act. Id. § 286.5(b)(2).

Consequently, immigration inspection user fees that should be remitted by an airline, but are not remitted within 31 days of the end of the applicable quarter, are "late," i.e., "delinquent," and are subject to interest and penalties. That result is, moreover, entirely fair in this case. American was continually "on notice" (and it consistently acknowledged) that it was obligated to remit to the Immigration User Fee Account within the Treasury all immigration inspection user fees that it collected, or should have collected, within 31 days after the close of the quarter in which the fees should have been collected. 8 U.S.C. § 1356(f)(2). This is not a case in which the Government was advising American of a previously unknown or indeterminate liability. The notice requirement of the Act was therefore satisfied each time American's remittances of user fees came due. No independent "notice" by the agency of this continuing legal obligation upon American's part was required by law. Cf. Cecile Indus., Inc. v. Cheney, 995 F.2d 1052, 1055-56 (Fed. Cir. 1993) (holding offset provisions of Debt Collection Act do not limit Government's common law offset rights).

American's reading of the law, by contrast, is unreasonable, because it would allow airlines, and other collecting entities, to reap continual benefits simply by failing to remit the proper amounts of user fees to the Government, and awaiting the results of the Government's annual, or even less frequent, user fee audits. For example, if, similar to the circumstances here, a carrier owed user fees for a certain quarter in 2002, but the Government did not discover that obligation until mid-2003, under American's interpretation, the airline would be guaranteed to avoid paying any interest on the obligation, and thus would obtain an interest-free loan of a year or more from the Government, provided the airline paid the audit assessment within 30 days.

That result is illogical and would defeat the Debt Collection Act's purpose of permitting the Government to collect the actual, adjusted time value of the obligations owed to it.

III. The Penalty Was Properly Imposed

Similarly, the Debt Collection Act's implementing regulations, the validity of which is unchallenged here, provide that penalties, like interest, "shall accrue from the date of delinquency." 31 C.F.R. § 901.9(d). Thus, for essentially the same reasons given above, CBP properly imposed the penalty upon American in 2003. American's payment in September 2003 – although made approximately 70 days after the formal notice of the audit results – was made far more than 90 days after the date upon which the immigration user fees became "delinquent," which was, at the latest, approximately January 31, 2003. See 8 U.S.C. § 1356(f)(3). Should the Court reach this argument, therefore, American should not recover the penalty under count III.

CONCLUSION

For the reasons given above and in our first post-hearing brief, we respectfully request the Court to deny American all relief or, in the alternative, to deny relief under count III.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

s/Jeanne E. Davidson
JEANNE E. DAVIDSON
Director

s/Kyle Chadwick
KYLE CHADWICK
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification, 8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tele: (202) 616-0476
Fax: (202) 305-7644

Attorneys for Defendant

OF COUNSEL:

ANDREW S. KOSEGI
Attorney
U.S. Customs and Border
Protection
Indianapolis, IN

CYNTHIA A. KOCH
Senior Counsel
United States Department of
Agriculture
Washington, DC

June 22, 2007

CERTIFICATE OF FILING

I certify under penalty of perjury that the attached document was electronically filed on June 22, 2007. I understand that service is complete upon filing and that parties and others may access the filing through the Court's electronic system.

s/Kyle Chadwick